[No. 7141.   Decided April 2, 1908.]

THOMPSON-SPENCER COMPANY, *Appellant*, v. O. A.
THOMPSON *et al.*, *Respondents.*[1]

QUIETING TITLE—EVIDENCE—SUFFICIENCY—DEFENSES—STIPULATED
DAMAGES — PARTNERSHIP — DISSOLUTION — EFFECT OF STIPULATION.
Where copartners dissolved partnership and formed a corporation,
agreeing to convey all their real estate to it in consideration of
stock, but in the conveyance a certain tract was omitted because of
pending negotiations for its sale or trade to a third party, which
however was never consummated, the corporation is entitled to have
its title quieted as against such third person and a retiring partner
who had made a quitclaim deed thereof to such third party with
full knowledge of the facts; and the fact that the copartners, upon
dissolving partnership and transferring the interest of one to the
other, had agreed upon stipulated damages for breach of the terms
of their dissolution agreement, would have no effect upon the cor-
poration's right to relief.

Appeal from a judgment of the superior court for Stevens
county, Sullivan, J., entered April 24, 1907, upon sustaining
defendants' motion to dismiss the action at the close of plain-
tiff's case, in an action to quiet title.   Reversed.

*Danson & Williams*, for appellant.

*Jesseph & Grinstead* and *H. N. Martin*, for respondents.

Root, J.—The material facts appearing from the evidence
in this case were substantially as follows:  Appellant, Thomp-
son-Spencer Company, is a corporation and was organized
early in September, 1905.   Respondents O. A. Thompson
and Celin R. Thompson are husband and wife, and respond-
ents H. N. Martin and A. V. Martin are husband and wife.
About January 1, 1904, O. A. Thompson and E. L. Spencer
formed a partnership under the name of Thompson-Spencer
Company, for the purpose of conducting a sawmill business
at Arden, Washington.   The partnership at the time of com-

[1]Reported in 94 Pac. 935.

mencing to do business acquired considerable personal and real property for use in the partnership business, and included in this property was the southeast quarter of the southwest quarter of section 10, township 34, north, of range 39, E., W. M. On this forty acres of land above described was located, in part, the planing mill of the partnership, and it was further used for the purpose of piling its lumber and logs. The sawmill of the partnership was located on an adjoining tract of land, and past the mill flowed the Colville river. The mill was down the stream from the particular forty acres involved in this action. The Colville river was used in floating logs to the mill, where they were cut into lumber. Before reaching the mill, the Colville river crossed one corner of this disputed forty acres, and this portion of the river and the sloughs from the river on this forty acres were used for the purpose of storing logs. The slip or logway from the mill extended into the Colville river on this particular forty acres.

Prior to September 6, 1905, the partnership had become heavily involved financially and was at that time owing debts aggregating about $23,000. The partners, Thompson and Spencer, were unable to agree upon the management and conduct of the business, and were unable together to raise the necessary funds to meet their obligations. Under these circumstances it became necessary that they should dissolve the partnership, and as Thompson was unwilling or unable to purchase the interest of Spencer, it was agreed that Spencer should purchase the interest of Thompson. Spencer was unable to pay cash for Thompson's interest, and in order to satisfactorily secure Thompson and carry out their plan of sale and purchase, it was agreed that they would form a corporation with the capital stock of $50,000, and would convey all of the assets to such corporation, the corporation to assume and pay the obligations of the partnership; that in so forming the corporation, half of the capital stock should be issued to Thompson and half to Spencer, and that Thompson would give Spencer an option to purchase his (Thompson's) stock at a

date fixed, upon the payment of $5,000, and until such time Thompson's stock should be placed in escrow; that during the existence of the escrow, Spencer should have the right to manage the corporation without interference from Thompson; that one-tenth of one share of the stock of Thompson should be issued to one A. C. Shaw so that he might qualify as a trustee and act until the expiration of the escrow. A written contract embodying the agreement of the partners was entered into on September 6, 1905, by Thompson and Spencer. In this written contract, among other things, it is provided:

"Whereas, the said parties have become satisfied that it is for their mutual interest to virtually dissolve the co-partnership heretofore existing between them, and to divide as nearly as may be the surplus over and above the co-partnership debts, and,

"Whereas, the said parties deem it for their interest to form a corporation and divide the stock between themselves and enter into a contract for the sale thereof by one to the other, and,

"Whereas, the co-partnership have assets aggregating approximately $35,000 and owe to other persons approximately $23,000. . . . It is further understood and agreed that in the transfer of the assets of the co-partnership to the corporation now being formed that it shall be stipulated and agreed in such transfer that the said corporation assume and agree to pay the existing obligations of the co-partnership heretofore existing between said Thompson and the said Spencer and that in case of their failure so to do that said Thompson or Spencer, or both, shall have the right to prosecute an action to compel it so to do."

Immediately after the above contract was made between Thompson and Spencer, articles of incorporation were prepared and executed incorporating appellant Thompson-Spencer Company. The minute book of the corporation was produced in evidence and the material portions showing the organization were introduced in evidence. The minute book, under date September 6, 1905, recites:

"O. A. Thompson, E. L. Spencer and A. C. Shaw being about to continue a lumber business heretofore conducted by Thompson and Spencer and believing that it can be better conducted to their mutual satisfaction if a corporation is organized and the stock divided between them, have on this day signed in triplicate articles of incorporation. . . ."

The minutes of the first meeting contain the following:

"Thompson and Spencer propose to transfer to the company the assets of the co-partnership for the sum of $50-000.00, the corporation to assume and pay as part of the purchase price, the co-partnership obligations and debts of the co-partnership, the purchase price of the assets being payable in stock of the company, the insurance on the property transferred to be assigned to the company, it was therefore resolved that the property be accepted. Unanimously carried."

At the meeting of appellant Thompson-Spencer Company, at which these records above mentioned were made, all of the incorporators, stockholders and trustees were present and participated. The minutes of these meetings were read to Mr. Shaw at such meeting, he having been the attorney employed in organizing the company and having previously prepared the necessary record for the purpose of completing the organization. Thereafter half of the stock was issued to E. L. Spencer, half of the stock (less cne-tenth of a share) to O. A. Thompson, and one-tenth of a share to A. C. Shaw. The stock standing in the name of Thompson and Shaw was then placed in escrow, pursuant to the contract between Thompson and Spencer. The option to purchase this stock was thereafter exercised by E. L. Spencer and the purchase price therefor paid.

Previous to the oragnization of the corporation the partners, Thompson and Spencer, had discussed the advisability of trading a portion of this forty acres to respondent H. N. Martin for certain overflow land owned by said Martin, but an agreement had never been reached. For the purpose of making a formal transfer from the partnership to the cor-

poration, Mr. Shaw prepared the proper bills of sale and deeds evidencing the contract and agreement above set out, and in the deeds this particular forty acres, as well as other land, was included. These deeds and bills of sale contained all of the provisions called for by the contract, including the assumption of the indebtedness of the partnership. When the deeds were presented for signature, respondent O. A. Thompson suggested that respondent H. N. Martin had requested that this particular forty acres should not be formally transferred to the corporation, as he preferred his deed, in the event a trade was made, to come direct from the partners. Upon this suggestion being made by Thompson, the deeds were changed so as to exclude this particular forty acres, for the purpose of having the deeds run direct to Martin from the partnership, rather than the corporation, if a trade was made. Thereafter some further negotiations were had with reference to a trade of a portion of this forty acres by the corporation to respondent H. N. Martin for certain overflow land, but a deal was never consummated. Thompson and Martin called at the office of the corporation several times and attempted to complete some trade with the corporation through E. L. Spencer, its president, but an agreement was not made. During all of this time the corporation was in possession of this forty acres, using it in the conduct of its sawmill business in the manner in which the partnership had previously used it. Respondent H. N. Martin, with the consent of the corporation, had previously done certain slashing on this land and had constructed a wire fence across a portion of it. This wire fence was run for the purpose of preventing cattle crossing a certain county bridge. Thereafter it came to the corporation's notice that Martin was claiming that he had a contract for the purchase of a portion of this forty acres and was entitled to occupy same, and thereupon the corporation immediately tore down the fence that had been constructed. After all this had transpired and on May 28, 1906, O. A. Thompson and Celin R. Thompson executed to respondent

H. N. Martin a quitclaim deed for the entire forty acres, and the deed was placed of record. This deed was acknowledged by respondents Thompson, and in the acknowledgment there appears the following:

"Also O. A. Thompson acknowledged to me that he is the same person who, together with E. L. Spencer, constituted the Thompson and Spencer copartnership."

Upon the recording of this deed from respondents Thompson to H. N. Martin, appellant, Thompson-Spencer Company, brought this action, reciting the above facts in substance, and asking for a decree adjudging it to be the owner of the said forty-acre tract and to have its title quieted and all clouds thereon removed, and for decree requiring the respondents to execute the necessary instruments for the purpose of clearing the title, and further prayed that in the event appellant's title should not be sustained, that it recover an affirmative personal judgment against respondents O. A. Thompson and Celin R. Thompson for the value of said real estate and its damage. After the introduction of appellant's evidence showing the facts as above stated, respondents moved to dismiss the action, and their motion was sustained. This appeal is from the order and judgment so made by the court.

The contention of respondents is that this particular forty acres was to be deeded to Martin in consideration of certain overflow lands owned by Martin, which it was desirable that the copartnership and its successor, the corporation, should own for use in the sawmill and lumber manufacturing business; that this arrangement was made long prior to the formation of the corporation, and that the transfer by Thompson to Martin was a consummation of such agreement. It appears that on October 6, 1905, Martin wrote a letter to the Thompson-Spencer Company, in which it very plainly appears that some previous arrangements and negotiations had taken place between Martin and Thompson and Spencer relating to a transfer of the forty acres for overflow land, at a transfer of overflow land to Thompson and Spencer. It ap-

pears from the language of this letter that Spencer had knowledge of dealings with Martin regarding this transfer. It also appears that Martin was at Arden on several occasions regarding the transfer of this land. In pursuance of the negotiations to transfer the forty-acre tract in question to Martin, he had slashed and fenced the same, all to the knowledge of Spencer and the Thompson-Spencer Company, and all this without objection from Spencer or appellant.

The contract between Thompson and Spencer recites that in case of breach of its terms and provisions by either party, the damage for such violation should be $500, that portion of the contract so providing being in words and figures as follows:

"It is mutually understood and agreed that in case of any violation of the terms and conditions of this contract, that the damages shall be $500, which is fixed and agreed upon as stipulated damages and in no sense to be considered a penalty."

Respondents contended before the lower court, and now contend, that the parties to this contract having provided therein what the remedy for a violation thereof should be, waived any right to specific performance, assuming that such remedy existed.

We are unable to agree with the conclusion reached by the honorable trial court. We think the evidence produced justified relief to appellant. The respondents should have been required to present their evidence. The entire transaction should have been gone into, and such a decree rendered as would mete out substantial justice to all parties concerned. The provision for an allowance of $500 as stipulated damages has no application to the matter in issue herein.

The judgment of the honorable superior court is reversed, and the case remanded for further proceedings not inconsistent with the views herein expressed.

HADLEY, C. J., DUNBAR, RUDKIN, CROW, and MOUNT, JJ., concur.